E-FILED
Thursday, 20 February, 2020 02:52:38 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| SIDNEY HARRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 18-4095 |
| | ) | |
| CRAIG JONES, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## **SUMMARY JUDGMENT ORDER**

Plaintiff, proceeding pro se and presently incarcerated at Jacksonville Correctional Center, brought the present lawsuit pursuant to 42 U.S.C. § 1983 alleging deliberate indifference to a serious medical need and inhumane conditions of confinement arising from events that allegedly transpired during his incarceration at Hill Correctional Center. The matter comes before this Court for ruling on the Defendants' Motions for Summary Judgment. (Docs. 41, 43). The motions are granted.

## **PRELIMINARY MATTERS**

### **Plaintiff's Motion (Doc. 37)**

Plaintiff asks the Court to order defendants to provide a copy of his deposition for purposes of reviewing it for errors. Plaintiff later completed an errata sheet which was attached to Defendant Hawk's motion for summary judgment. (Doc. 53-14 at 35-38). Plaintiff's motion is denied as moot.

### **Defendant Hawk's Motion for Leave (Doc. 53)**

Defendant Hawk filed a motion requesting leave to file a supplemental memorandum of law in support of her motion for summary judgment. The supplemental memorandum provides

additional citations and records required by Fed. R. Civ. P. 56 and local rules. Defendant's motion is granted. *See* Fed. R. Civ. P. 56(e)(1).

## SUMMARY JUDGMENT STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). All facts must be construed in the light most favorable to the non-moving party, and all reasonable inferences must be drawn in his favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## FACTS

Plaintiff was incarcerated at Hill Correctional Center from July 16, 2013 until his transfer to another prison in March 2017. Defendants were employed at Hill in the following capacities: Defendant Hawk was a registered nurse; Defendant Jones was a correctional lieutenant; and, Defendant Oelberg was a correctional officer.

On June 1, 2016, at approximately 6:00 p.m., Plaintiff requested emergency medical treatment from a correctional officer in his housing unit. Pl.'s Dep. 44:19-20. Defendants Jones and Hawk arrived approximately ten (10) minutes later to find Plaintiff lying on a dayroom table reporting dizziness and an inability to walk. *Id.* 45:19-22; 46:2-6. These complaints stemmed from a medical complaint Plaintiff had made three days earlier: he had popped a boil on his knee,

resulting in pain, swelling, and difficulty walking. Defendant Jones and Hawk apparently told Plaintiff that they did not believe he was unable to walk, and that they would not carry him to a golf cart known as the "ambulance" for transport to the healthcare unit (HCU). *Id.* 47:6-17. Defendant Jones instead permitted volunteer inmates to carry Plaintiff on a back board to the golf cart. *Id.* Plaintiff arrived in the HCU without incident approximately 30 minutes after requesting medical treatment from the housing unit officer. *Id.* 51:12-14.

In the days leading up to this event (May 29-31, 2016), medical staff treated Plaintiff's knee complaints with Motrin, ice, admittance to the infirmary, and precautionary antibiotics. (Doc. 53-4 at 7-16). Aside from the first examination, the medical records indicate that Plaintiff's resulting wound showed no signs of infection, and that Plaintiff was able to walk, albeit with an occasional limp. *Id.* Plaintiff reported reduced pain with Motrin, and that the antibiotics resolved his condition. *Id.*; Pl.'s Dep. 38:12-15; 43:2-4.

Defendant Hawk had examined Plaintiff on one occasion for this condition prior to the request for emergency medical treatment. On May 30, 2016, Plaintiff reported that his knee had cracked and that he could not walk. (Doc. 53-4 at 12-13). Defendant Hawk observed no acute distress, "no deficit in [range of motion]" in Plaintiff's knee, and no signs of infection. *Id.* Plaintiff denied numbness or tingling. Plaintiff was able to stand, but he walked with a limp. *Id.* Plaintiff asked security staff at that time if he could use the phone and laughed in response to Defendant Hawk's question regarding how he would use the phone if he could not walk. *Id.* Defendant Hawk referred Plaintiff to Dr. Sood. *Id.*

Defendant Hawk examined Plaintiff upon arrival in the HCU on June 1, 2016. Her medical notes indicate that Plaintiff was uncooperative and that he "had his hand covering [his] face although every time anyone entered the HCU, he would look up to see who it was." (Doc.

53-4 at 17-18). Defendant Hawk assessed Plaintiff's condition to the best of her ability given Plaintiff's recalcitrance, gave Plaintiff water to drink, and indicated that Plaintiff refused to attempt to "walk straight line with eyes closed." *Id.* After the examination, Defendant Hawk told correctional officers that Plaintiff could walk back to his housing unit. Pl.'s Dep. 87:22-24.

Plaintiff refused. *Id.* 89:9-14. Defendant Jones then pushed Plaintiff in a wheelchair to a holding cell in segregation. *Id.* 88:3-4. Fifteen (15) minutes later, Plaintiff told Defendant Oelberg that he needed to use the bathroom, which required taking Plaintiff elsewhere as the holding cell did not have a toilet. *Id.* 94:22-23. Defendant Oelberg, the only correctional officer present, denied that request and the ensuing requests Plaintiff made over the course of the next several minutes. *Id.* 95:1-6. Plaintiff urinated on himself approximately two minutes after his third request. *Id.* 98:3-6.

Plaintiff did not communicate to Defendant Oelberg that he was about to lose control of his bladder at any time. Plaintiff testified that he typically drinks 8-10 glasses of water per day, and that he does not suffer from health conditions that cause incontinence. Pl.'s Dep. 70:21-23. Plaintiff was in the holding cell for approximately 40 minutes total. *Id.* 92:3-5. Plaintiff had access to a faucet once placed in another segregation cell; prison officials brought his property, including hygiene items and additional clothing, the next day. *Id.* 120:13-16; 127:10-15. He did not have any further contact with Defendant Oelberg. He did not suffer any physical injuries as a result of these events. *Id.* 102:24-103:2; 104:23-105:1; 117:15-17.

## ANALYSIS

Plaintiff alleges that Defendants Jones and Hawk acted with deliberate indifference during the events surrounding his request for emergency medical treatment on June 1, 2016.

Plaintiff claims Defendant Oelberg subjected him to inhumane conditions of confinement for refusing to allow him to use the bathroom while confined in the segregation holding cell.

## Medical Claims

Inmates are entitled to adequate medical care under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). To prevail, a plaintiff must show that the prison official acted with deliberate indifference to a serious medical need. *Id.* at 105. Claims of negligence, medical malpractice, or disagreement with a prescribed course of treatment are not sufficient. *See Petties v. Carter*, 836 F.3d 722, 729-30 (7th Cir. 2016) (en banc); *McDonald v. Hardy*, 821 F.3d 882, 888 (7th Cir. 2016).

Liability attaches when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A prison official's subjective awareness of a risk "is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* at 842.

Prison guards and other non-medical personnel may be held liable for "intentionally denying or delaying access to medical care or intentionally interfering with treatment once prescribed." *Estelle*, 429 U.S. at 104. Plaintiff arrived at the healthcare unit approximately 30 minutes after he requested medical treatment. Defendant Jones did not unnecessarily delay or interfere with Plaintiff's access to that treatment.

Defendant Jones' decisions to permit other inmates to carry Plaintiff on the back board and to push Plaintiff in a wheelchair to the segregation unit did not expose Plaintiff to a

significant risk of harm or exacerbate his injuries. Defendant Jones' personal beliefs regarding Plaintiff's ability to walk at those times does not render his actions unconstitutional, nor was Plaintiff entitled to demand the specific manner in which prison officials facilitated treatment. The Court finds that no reasonable juror could conclude that Defendant Jones acted with deliberate indifference.

Medical professionals act with deliberate indifference only if treatment decisions are "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Sain v. Wood*, 512 F.3d 886, 894-95 (7th Cir. 2008). Courts typically defer to the medical provider's treatment decision unless the evidence suggests that "no minimally competent professional would have so responded under those circumstances." *Id.*

Plaintiff told Defendant Hawk on June 1, 2016, that he was dizzy and could not walk. Defendant Hawk was not required to believe Plaintiff when he said he could not walk; she was entitled to conduct an examination and form her own medical opinion. *See Kyles v. Krizan*, 771 F. App'x. 676, 678 (7th Cir. 2019) (nurses "were not required to take [prisoner's] word…they could make their own, independent medical judgments about the necessity of certain treatments."). Defendant Hawk did not observe any issues with Plaintiff's knee during an examination conducted two days prior for similar complaints. The other medical records available disclosed that Plaintiff had been able to walk despite the presence of the wound on his knee, and Plaintiff refused to attempt a walking test on June 1, 2016, that would have shown whether he was able to walk.

Plaintiff did not exhibit any signs on an infection on June 1, 2016, and his testimony that the antibiotics cleared up his issues suggests only that the infection had not worsened. Plaintiff

was also able to walk while previously receiving treatment for his wound despite reporting a high level of pain. (Doc. 53-4 at 12-13) (Plaintiff reported pain as a 9 out of 10, with 10 being the greatest amount of pain; nurse noted Plaintiff could stand and that he walked with a limp); *id.* at 9 ("gait steady unassisted, reports pain 9"). Plaintiff offers no evidence to refute the assertions made in Dr. Sood's affidavit stating that Defendant Hawk responded appropriately to the medical symptoms Plaintiff presented.

The record does not disclose any evidence showing that Defendant Hawk's treatment decisions lacked the exercise of professional judgment. Accordingly, the Court finds that no reasonable juror could conclude that Defendant Hawk violated Plaintiff's constitutional rights.

### Conditions-of-Confinement Claim

A prison official violates the Eighth Amendment if he or she denies a prisoner of his or her basic human needs, but only if the official is aware of and deliberately indifferent to an objectively serious risk of harm. *Townsend v. Fuchs,* 522 F.3d 765, 773 (7th Cir. 2008). The conditions at issue must "sufficiently serious" such that "a prison official's act or omission result[ed] in the denial of the minimal civilized measure of life's necessities." *Farmer,* 511 U.S. at 834. Prison conditions may be uncomfortable and harsh without violating the Constitution. *See Dixon v. Godinez,* 114 F.3d 640, 642 (7th Cir.1997). Therefore, "extreme deprivations are required to make out a conditions-of-confinement claim." *Henderson v. Sheahan,* 196 F.3d 849, 845 (7th Cir. 1999).

Plaintiff was detained in a holding cell without a toilet for approximately 40 minutes. He does not argue that his need to urinate during this time resulted from a medical condition of which Defendant Oelberg was aware, nor did Plaintiff warn Defendant Oelberg that the denial of access to a toilet would cause him to urinate on himself. Plaintiff had access to running water

shortly after he urinated in the holding cell, and he received his property, including clothing and hygiene items, the next day. Despite allegedly not being permitted to shower or having access to laundry services until three days later, Plaintiff had the ability to wash himself in the sink, rinse out his jumpsuit, and change into other clothing within a reasonable time period after this incident occurred. Plaintiff suffered no physical harm.

The temporary nature of Plaintiff's lack of access to a toilet, the short duration that he lacked hygiene items and extra clothing, and the absence of physical injury do not permit an inference that Plaintiff suffered the type of serious deprivation required to show a constitutional violation, or that prison officials knew that the conditions posed a substantial risk to Plaintiff's health or well-being. *See White v. Knight*, 710 F. App'x. 260, 261 (7th Cir. 2019) (access to bathrooms once every two hours during lockdowns was not sufficiently serious); *Dixon*, 114 F.3d at 643 (the severity and duration of the deprivation determines whether it is sufficient serious). Accordingly, the Court finds that no reasonable juror could conclude that prison officials subjected Plaintiff to unconstitutional conditions of confinement.

**IT IS THEREFORE ORDERED:**

1) **Plaintiff's Motion [37] is DENIED as moot.**

2) **Defendant Hawk's Motion [53] is GRANTED.**

3) **Defendants' Motions for Summary Judgment [41][43] are GRANTED. The clerk of the court is directed to enter judgment in favor of Defendants and against Plaintiff. All pending motions not addressed below are denied as moot, and this case is terminated, with the parties to bear their own costs. Plaintiff remains responsible for the $350.00 filing fee.**

4) **If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal in forma pauperis MUST identify the issues the Plaintiff will present on appeal to assist the court in determining whether the appeal is taken in good faith. *See* Fed. R. App. P. 24(a)(1)(c); *see also Celske v Edwards*, 164 F.3d 396, 398 (7th Cir. 1999)(an appellant should be given an opportunity to submit a statement of his grounds for appealing so that the district judge "can make a reasonable**

**assessment of the issue of good faith.");** *Walker v. O'Brien*, **216 F.3d 626, 632 (7th Cir. 2000) (providing that a good faith appeal is an appeal that "a reasonable person could suppose…has some merit" from a legal perspective). If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee regardless of the outcome of the appeal.**

Entered this 20th day of February, 2020.

*s/Sara Darrow*
SARA DARROW
CHIEF U.S. DISTRICT JUDGE
